# United States District Court
For the District of South Carolina
Florence Division

WILLIAM M. SCHMALFELDT, SR )  Suburban Extended Stay Hotel
~~Woodbridge Suites~~ ) 1914 W. Lucas ST, Room 170
~~220 Whitty Drive, Room 224~~ ) Florence, SC 29501
~~Myrtle Beach, SC 29579~~ )
(843) 429-0581 )
    *Pro Se Plaintiff* )
)
                -v- )  Case # 4:17-cv-01310-RBH-KDW
)
PATRICK G. GRADY )
414 Gregory Ave, Apt. 1C )
Glendale Heights, IL 60139 )
)
and )
)
WILLIAM JOHN JOSEPH HOGE III )
20 Ridge Rd. )
Westminster, MD 21157 )
)
and )
)
ERIC P. JOHNSON )
240 Boulton Ln. )
Paris, TN 38242 )
)
and )
)
SARAH PALMER )
2807 Spring Garden Drive. Apt. B )
Greeensboro, NC 27403 )
)
and )
)
JOHN DOE )
PETER POE )
RANDY ROE )
JANE DOE )
POLLY POE )
RHONDA ROE )
    *Unnamed defendants* )

REDLINED PROPOSED SECOND AMENDED COMPLAINT FOR A CIVIL CASE ALLEGING HARASSMENT, STALKING, LIBEL, CONSPIRACY AND RECKLESS CONDUCT/WANTON AND WILLFUL MISCONDUCT, AND ABUSE OF PROCESS; ADDING JOHN DOE DEFENDANTS, JURY TRIAL DEMANDED.

NOW COMES pro se Plaintiff William M. Schmalfeldt, Sr., asking the court to permit the submission of his Second Amended Complaint in the above captioned action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs the amending and supplementing of complaints. Rule 15(d) provides that a party may, with leave of the court, "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rule 15(a) permits a party to amend a pleading "with the opposing party's written consent or the court's leave." "Motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard." See, e.g., Wildearth Guardians v. Kempthorne, 592 F. Supp. 2d 18, 23 (D.D.C. 2008).

"The court should freely give leave [to amend or supplement] when justice so requires." *Fed. R. Civ. P. 15(a)(2)*; see also *Wildearth Guardians*, 592 F. Supp. 2d at 23 ("The decision whether to grant leave to amend or supplement a complaint is within the discretion of the district court, but leave 'should be freely given unless there is good reason . . . to the contrary'" (quoting *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996)). "[T]he non-movant bears the burden of persuasion that a motion to amend should be denied," and absent a "sufficient reason," "it is an abuse of . . . discretion to deny a motion to amend." *Nichols v. Greater Se. Cmty. Hosp.*, No. 03-cv-2081 (JDB), 2005 WL 975643, at *1 (D.D.C. Apr. 22, 2005). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' *Foman v. Davis*, 371 U.S. 178, 182 (1962); accord *Armstrong v. Bush*, 807 F. Supp. 816, 818-19 (D.D.C. 1992) (Rule 15 "has been liberally construed to allow amendments in the absence of undue delay or undue prejudice to the opposing party").

No sufficient reason to deny leave is present here.

**I. Parties to This Complaint**

2

1.      Plaintiff William M. Schmalfeldt, Sr., (Schmalfeldt) is a 62-year old former GS-13 Writer-Editor with the National Institutes of Health, in Bethesda, MD. He retired in 2011 due to advancing Parkinson's disease. A widower, Schmalfeldt lived in Elkridge, MD, when his wife died in 2015. He moved to Wisconsin that summer. In January 2017 he moved to Iowa. After forming a relationship with his fiancé, he moved to Myrtle Beach, SC, in April 2017 and then to Florence, SC, in July 2017.

2.      Defendant #1, Patrick G. Grady (Grady) is employed by a company known as Capgemini. Upon information and belief, he is in his early 30's. He has described himself online as a bipolar "functioning sociopath." Blogging and Tweeting under several different names, he became an acolyte of Defendant WJJ Hoge III and began doing the bidding of Hoge on information and belief out of some sense of misplaced fealty. He now blogs under the pseudonym "Paul Krendler" and his blog – which is a daily hate screed devoted to Schmalfeldt and his fiance (since she came into his life) – is called The Thinking Man's Zombie. (http://thinkingmanszombie.com) He is divorced and estranged from his ex-wife and son, a fact he blames on Schmalfeldt.

3.      Defendant #2, William John Joseph Hoge III is a 69-year old engineer employed as a contractor of some sort with the Goddard Space Center in Greenbelt, MD. He and his adult son, live in Westminster, MD. He is a widower, his wife dying on Thanksgiving Day, 2016. Hoge seems to spend most of his free time suing people. He is currently shepherding an unrelated lawsuit against Schmalfeldt and several other people in the Carroll County Circuit Court. He runs a blog called Hogewash (http://hogewash.com) which seems to be primarily devoted to bolstering his image as the leader of a personality cult by writing daily insults directed at Schmalfeldt and the other defendants in his lawsuit. He has tried nearly 400 times to get

Deleted: apparently developmentally disabled
Deleted: .
Deleted: Valentine's Day 2017
Deleted: s
Deleted: .
Deleted: .
Deleted: .
Deleted: .
Deleted: .

3

Schmalfeldt convicted of misdemeanor crimes and has failed every time. He maintained a peace order against Schmalfeldt because Schmalfeldt did not remove the "@" symbol before Hoge's name when tweeting about him. Hoge has immortalized this fact with a character on his blog, "Johnny Atsign."

4. Defendant #3, Eric P. Johnson (Johnson), on information and belief lives alone in Paris, TN. His wife lives in Indonesia and he never writes about her. His daughters have all joined the military at early ages. Another Hoge follower, Johnson does not have his own blog but posts comments on several others, including the blogs of three of the four defendants in this case. Johnson took it upon himself to declare Schmalfeldt a "child pornographer" after listening to comedy routines recorded by Schmalfeldt that involved no children and no sex. Instead of keeping his opinion to himself, Johnson mounted a nearly successful campaign to have Schmalfeldt kicked out of his Wisconsin apartment by contacting the apartment manager and Cardinal Capital Management Board of Directors to warn them of the "child pornography" being produced in Schmalfeldt's apartment. This led to a police visit to Schmalfeldt's residence so the police could check Schmalfeldt's computer. Schmalfeldt has several books and comedy albums available on Amazon. Most bear a one-star rating from Johnson, warning potential readers, listeners about buying merchandise from a "child pornographer".

5. Defendant #4, Sarah Palmer (Palmer) is a middle-aged woman who abandoned her husband and daughter to move from California to North Carolina. She operates a blog called Billy Sez (http://billysez.wordpress.com) in which she applies her own defamatory takes on things Schmalfeldt has said and written. When Schmalfeldt insisted that she cease and desist from this misuse of his name for her own commercial benefit, she got a North Carolina no contact order against Schmalfeldt. She also obtained a no contact order to protect her grandson as

4

Schmalfeldt once posted a blurred, unidentifiable picture of the child on his blog. In July 2017, Plaintiff became aware that not only had Palmer moved from Reidsville in Rockingham County to Greensboro in Guilford County, but that she had relocated from Rockingham County prior to seeking her and her grandson's Restraining Order against Plaintiff, falsely filing that she lived in Rockingham County at the time she filed her complaint.

6. The various "John Doe" defendants represent anonymous commenters who may or may not be added as defendants as they are identified during the discovery process.

II. Basis for Jurisdiction and Venue

7. This case involves a diversity jurisdiction as Plaintiff and Defendants live in different states. The plaintiff lives in South Carolina, Grady lives in Illinois, Hoge lives in Maryland, Johnson lives in Tennessee, Palmer lives in North Carolina. The Doe defendants residence remains unknown, therefore cannot factor in the diversity jurisdiction. The amount in controversy exceeds $75,000.

8. Venue and subject matter jurisdiction are appropriate as demonstrated by the court in *HAWKINS v. BLAIR* | 780 S.E.2d 515 (2015) The trial court explained that a tort action is governed by the substantive law of the state where the tort was committed, i.e., where the injury occurred or where the last event making the tortfeasor liable occurred. The court concluded that the alleged injury would have been suffered in South Carolina, and that the appellee's "last acts" to make them liable also would have occurred in South Carolina. Thus, the court concluded that it would need to apply South Carolina tort law, (See *Id.* at ¶3(e)) In each case, the "last acts" occurred after Schmalfeldt relocated to South Carolina.

9. Personal Jurisdiction is proper in this case as each of the defendants has made the willful decision to defame Plaintiff in the forum state and to aim their blogs and online

5

comments toward South Carolina. In diversity cases, a federal district court has personal jurisdiction over a party if a court of the state in which it sits would have such jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Grp., Inc.,* 906 F.2d 276, 279 (7th Cir. 1990). At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits. *Mid-State Distribs., Inc. v. Century Imps., Inc.,* 310 S.C. 330, 426 S.E.2d 777 (1993). Specific jurisdiction over a cause of action arising from a defendant's contacts with the state is granted pursuant to the long arm statute. *S.C. Code Ann. § 36-2-803 (2003).* South Carolina's long-arm statute, which includes the power to exercise personal jurisdiction over causes of action arising from tortious injuries in South Carolina, has been construed to extend to the outer limits of the due process clause. *Meyer v. Paschal,* 330 S.C. 175, 498 S.E.2d 635 (1998). Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process. *Moosally v. W.W. Norton & Co., Inc.,* 358 S.C. 320, 329, 594 S.E.2d 878, 883 (Ct. App. 2004)(citing *Sonoco Prods. Co. v. Inteplast Corp.,* 867 F.Supp. 352, 354 (D.S.C.1994). Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985). Further, due process mandates that the defendant possess sufficient minimum contacts with the forum state, so that he could reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980); *Atlantic Soft Drink Co. v. South Carolina Nat'l Bank,* 287 S.C. 228, 336 S.E.2d 876 (1985). Without minimum contacts, the court does not have the "power" to adjudicate the action. *Southern Plastics Co. v. Southern Commerce Bank,* 310 S.C. 256, 260, 423 S.E.2d 128, 131(1992). The court must also find that the exercise of jurisdiction is "reasonable" or "fair." *Id.* Under the fairness prong, the court must consider: (1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction.

6

*Clark v. Key*, 304 S.C. 497, 405 S.E.2d 599 (1991). See also *Southern Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131. The due process requirements must be met as to each defendant and thus the Court is to assess individually each defendant's contacts with South Carolina. *See Rush v. Savchuk*, 444 U.S. 320 (1980). Further, the focus must center on the contacts generated by the defendant, and not on the unilateral actions of some other entity. . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)(holding "unilateral activity of another party or a third person is not an appropriate consideration"). The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. All four defendants have remarked on Plaintiff's difficulty in finding a permanent residence since moving to South Carolina in April 2017. Various applications made by Plaintiff to various apartment complexes have been rejected or outright ignored due to a well-discussed tendency among property renters to do a "Google Check" on the name of the prospective tenant. Because of the many years of libelous publications, including directives to "Google Bill Schmalfeldt," it is understandable that South Carolina landlords would refuse to rent an apartment to the Plaintiff. Thus, due in large part to the libelous and reckless activities of the Defendants, South Carolina landlords have been deprived of the income they would make from a law-abiding renter. Thus aiming their blogs and comments at South Carolina landlords, all four defendants have purposefully availed themselves with South Carolina contacts and have caused harm to forum state residents other than the Plaintiff and his future wife.

**COUNT I**
**Libel**
**(All Defendants)**

10. Plaintiff hereby incorporates by reference all paragraphs above.

11. South Carolina defines libel as follows:

> **…with malicious intent originat(ing), utter(ing), circulat(ing) or publish(ing) any false statement or matter concerning another the effect of which shall tend to injure such person in his character or reputation…**

7

(SECTION 16-7-150)

12. Defendant Grady's blog, written under the pseudonym Paul Krendler, is a three-year exercise in defamation. **(Original EXHIBIT H)**

13. Hoge will occasionally delve into direct defamation, such as in November 2015 when he posted the following defamatory screed.

> **Bill Schmalfeldt is a deranged cyberstalker. He is a liar. He is someone who is untrustworthy, who fails to live up to his commitments or abide by agreements he has signed. He had the opportunity to make a clean start when he fled from Maryland to Wisconsin. He appears to have wasted that opportunity.**
> https://hogewash.com/2015/11/16/reiterating-editorial-policy/

14. This is a false statement made with malicious intent. This plaintiff has never been diagnosed as "deranged" or been convicted for "cyberstalking." The former is a mental diagnosis intended to cast a person as a crazed lunatic, and the latter is a designation of law which, if true, would cast the Plaintiff in an unfavorable light. It is not true, therefore it is libelous.

15. Schmalfeldt has several books and CDs for sale on Amazon.com. Johnson, under the name "Bluelake", has written 1-star reviews for most of them, labeling Schmalfeldt a child abuser, child pornographer and a dangerous, demented cyberstalker. **(Original EXHIBIT I)** He has also made similar comments in the blogs of other defendants. **(Original EXHIBIT J)** These allegations are false statements made with malicious intent. This plaintiff has never been diagnosed as "demented" or been convicted for "cyberstalking." The plaintiff has never been legally accused or convicted for child abuse and child pornography. Therefore, these statements fall squarely into the category of libel per se.

16. Defendant Palmer has a stock in trade in the daily defamation of Schmalfeldt on her Billy Sez blog. She has been admonished to stop using Plaintiff's name and images for

8

commercial purposes, but she continues to ignore the admonitions.

17. This blog consists entirely of Palmer scouring Schmalfeldt's Twitter feed and blogs, stealing images, and applying her own defamatory spin on the things written.

18. Palmer excuses her actions by stating she is only commenting on things she can prove Plaintiff said. The libel occurs, however, in her spin on Plaintiff's actual comments. **(Original EXHIBIT K)**

19. These blog postings amount to false statements made with malicious intent. The defendant cannot say she is merely quoting the defendant while twisting his words into meaning something she has created in her imagination. These false impressions tend to cast the Plaintiff into a false light and harm his reputation. It is not a defense to point to a ruined reputation that you assisted in wrecking with malicious falsehoods and then declare, "See, he already has a bad reputation." Plaintiff's reputation was just fine before he ran afoul of this group of WJJ Hoge followers.

20. The actions of these defendants have caused Schmalfeldt to have to move three times. He lives in fear of his life and safety and damage to his property. His reputation is damaged beyond repair. Due to the extensive harm caused to Schmalfeldt by the harassment and stalking of these defendants he asks for $100,000 in actual damages and $500,000 in punitive damages from each of the defendants.

**COUNT II**
Conspiracy
**(All Defendants)**

21. Plaintiff hereby incorporates by reference all paragraphs above.

22. South Carolina defines conspiracy, in part:

> **The common law crime known as "conspiracy" is defined as a combination between two or more persons for the purpose of accomplishing an unlawful**

9

object or lawful object by unlawful means.

23. The comment section on Hoge's blog contain hundreds of such conspiratorial messages designed to cause trouble for Schmalfeldt. The same is true with Palmer's blog and Grady's blog. (**Original EXHIBIT L**)

24. This cooperation between named and unnamed conspirators to do harm to Schmalfeldt prove the allegation of conspiracy. Due to the extensive harm caused to Plaintiff by the conspiratorial efforts of these defendants he asks for $100,000 in actual damages and $500,000 in punitive damages from each of the named defendants.

## COUNT III
### RECKLESS CONDUCT/WANTON AND WILLFUL MISCONDUCT
### (All Defendants)

25. Plaintiff hereby incorporates by reference all paragraphs above.

26. Defendants Hoge, Grady and Palmer use their respective blogs to incite their readers' passion and hatred against Plaintiff. They do this by writing incendiary posts, knowing these posts will cause their comments to rant, rave, suggest and plan violent acts against Plaintiff.

27. In a ruling that has direct implications on this case, a Federal Judge David Hale in Louisville ruled on March 31, 2017 that President Donald Trump could be sued for inciting violence by ordering his supporters to remove protesters from a rally. In a Memorandum Opinion and Order in the US District Court for the Western District of Kentucky, Louisville Division, Civil Action No. 3:16-cv-247-DJH, Judge Hale ruled:

> Though the Trump Defendants are correct that "a proprietor is not the insurer of the safety of its guests," *Murphy v. Second St. Corp.*, 48 S.W.3d 571, 574 (Ky. Ct. App. 2001), this does not absolve them from liability. "In Kentucky, 'the rule is that every person owes a duty to every other person to exercise ordinary care in his activity to prevent foreseeable injury.'" *Waldon v. Housing Auth. of Paducah*, 854 S.W.2d 777, 779 (Ky. Ct. App. 1991) (quoting *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (1987)). (Id. at pp. 13-14)

10

28. Hoge and Grady and Palmer surely had to be aware that sharing Schmalfeldt's address and telephone number would lead their more unstable readers to take actions against Schmalfeldt, as such actions have been attempted in the past – the attempt to forge the Schmalfeldt's signature, the theft of Schmalfeldt's identity, the stalking of the Schmalfeldt's parking lot, the photograph of Defendant's car posted on Grady's blog, and many other similar examples.

29. The Defendants were certainly aware of the passions being provoked by their blog postings and inflammatory comments. However, they disavow responsibility by asserting that they are merely engaging in First Amendment activity. Although the defendants have complete control over the comment section of their blogs – evidenced by the fact that only commenters who agree with the bloggers are allowed to post – they refuse to moderate even the most disgusting, heinous attacks against Plaintiff, leading their readers to call for actions to be taken against him, including physical harm and death. When people use the Internet to harm another person, they cannot hide behind the First Amendment. Indeed, just a few weeks ago, a man was arrested after sending a direct message to national reporter Kurt Eichenwald which, when opened, contained an animated strobe light which caused the reporter to suffer a seizure because he was epileptic and sensitive to strobe lights. (Criminal Complaint in the US District Court for the Northern District of Texas, Dallas Division, Case #3-17MJ192-BK) According to the complaint, the defendant knew that Mr. Eichenwald was epileptic. In fact, the message included with the attachment read, in effect, "You deserve a seizure." The defendant in that case believed he was protected by the First Amendment, but law enforcement officials and the courts determined that someone cannot use the Internet to cause harm to another person.

30. Because this reckless conduct and wanton/willful misconduct has caused physical

11

damage to Schmalfeldt's property, caused Schmalfeldt to move from Maryland to Wisconsin to Iowa then to South Carolina in the hopes of shaking these domestic terrorists and their terror tactics, because they have showed utter disregard for the health, welfare, safety of this plaintiff and little to no care for the damage and expense they have caused, Plaintiff asks for $500,000 from each defendant in actual damages and $1,000,000 in punitive damages from each defendant.

### COUNT IV
### Abuse of Process
### (Defendant Palmer Only)

31. Plaintiff hereby incorporates by reference all paragraphs above.

32. The tort of abuse of process consists of two elements: an ulterior purpose, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 136, 492 S.E.2d 103, 107 (1997). In December 2015, Defendant Palmer filed a complaint in Rockingham County, North Carolina, against Plaintiff on behalf of herself and her grandson, alleging stalking and harassment. In On January 27, 2016, a hearing was held where Palmer was granted the restraining orders. Plaintiff did not attend the hearing since he believed there was no way a judge would grant the restraining orders.

33. In July 2017 while gathering information on the Defendants in this case, Plaintiff not only learned that Palmer had moved to Guilford County from Rockingham County in November 2015, she falsely checked a box on the complaint form in December 2015 stating that she still lived in Rockingham County.

34. As Palmer's restraining orders had expired in January 2017, Plaintiff attempted to directly contact Palmer via the comment section of her WordPress blog, Twitter, e-mail and

12

telephone, asking a simple and polite question, "When did you move from Rockingham County to Guilford County," Plaintiff believing that he had the right to know whether or not Palmer had knowingly lied to the Court.

35. Palmer did not answer the Plaintiff. Nor did she ask the Plaintiff to cease contact. Instead, she filed another complaint alleging unwanted contact. Plaintiff traveled to Greensboro, NC, for the July 14 hearing where the Judge in the case appeared to Plaintiff to be overly solicitous and sympathetic to Palmer, accepting without demonstration of proof, that Palmer was so "anxious" over this 62-year old disabled person traveling to North Carolina to do her harm that she had recently begun taking anti-anxiety medications.

36. Plaintiff attempted to introduce evidence, including 134 pages of defamatory blog excerpts, to show that among all the things Palmer might be afraid of, this Plaintiff would be at the bottom of that list. The Judge did not even look at the pages nor did she allow Plaintiff to explain the nature of the history between Plaintiff and Palmer.

37. Even though North Carolina statutes clearly state that stalking victims must be in reasonable fear for their life and/or safety, the Judge would not allow Plaintiff to demonstrate that a person who writes a two-year defamatory blog specifically named for the person she fears is not in reasonable fear of that person. She granted Palmer's request for a restraining order.

38. The restraining order process was not designed to permit a vindictive petitioner to use ulterior motives to gain such a powerful order against another person just because she doesn't want to answer a question about whether or not she lied about her place of residence. This is an abuse of process for which Palmer must be held accountable.

**PUNITIVE DAMAGES**

39. The actions or omissions of Defendants as set forth in this Complaint demonstrate

malice, egregious conduct, insult, and a perverse gratification from the harm caused to Plaintiffs. Such actions or omissions by Defendants were undertaken with either (1) maliciousness, spite, ill will, vengeance or deliberate intent to harm Plaintiff, or (2) reckless disregard of the profound wrongfulness of their actions or omissions, and their harmful effects on Plaintiff. Accordingly, Plaintiff request an award for punitive damages beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants' conduct and to serve as a deterrent for anyone else contemplating the same sort of activity in the future.

## PRAYER FOR RELIEF

**WHEREFORE**: Plaintiff prays for judgment against all defendants as follows:

1. Nominal and general damages as asked for in each count;

2. Punitive damages as asked for in each count;

3. A permanent no contact order to be issued to each defendant;

4. A permanent injunction against defendants against further defamation, retaliation, and from using Plaintiff's name, image or likeness without his permission;

5. For the recovery of Plaintiff's full costs and expenses in bringing this suit as provided for in 17 USC § 505;

6. For such additional and further relief, in law and equity, as the court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Respectfully submitted this 17th day of July, 2017

William M. Schmalfeldt, Sr., Pro Se

14

Suburban Extended Stay Hotel
1914 W. Lucas St. Room 170
Florence, SC 29501
truthatory@outlook.com
(843) 249-0581

**Deleted:** Woodspring Suites [8]

15

| Page 1: [1] Deleted | Bill Schmalfeldt | 7/16/17 6:07 PM |

501 Redd St.                                    )
Reidsville, NC 27320

| Page 4: [2] Deleted | Bill Schmalfeldt | 7/16/17 6:10 PM |

to live with an apparent

drug user

| Page 7: [3] Deleted | Bill Schmalfeldt | 7/16/17 6:39 PM |

## COUNT I
## Harassment and Cyberstalking
## (All Defendants)

8. Plaintiff hereby incorporates by reference all paragraphs above.

9. Harassment is generally defined as follows:

   **Harassment is governed by state laws, which vary by state, but is generally defined as a course of conduct which annoys, threatens, intimidates, alarms, or puts a person in fear of their safety. Harassment is unwanted, unwelcomed and uninvited behavior that demeans, threatens or offends the victim and results in a hostile environment for the victim. Harassing behavior may include, but is not limited to, epithets, derogatory comments or slurs and lewd propositions, assault, impeding or blocking movement, offensive touching or any physical interference with normal work or movement, and visual insults, such as derogatory posters or cartoons. (See https://definitions.uslegal.com/h/harassment/)**

10. "Cyberstalking" is generally defined as follows:

    **Online harassment, sometimes referred to as "cyberharassment," usually pertains to threatening or harassing emails, instant messages, or website entries. It is often repeated attempts to target a specific person by directly contacting them, or indirectly using or disseminating their personal information, causing them distress, fear, or anger. Cyberstalking involves using the Internet or other electronic means to stalk a victim, and generally refers to a pattern of threatening or malicious behaviors. To be considered cyberstalking, the behavior must pose a credible threat of harm to the victim. (See https://www.privacyrights.org/consumer-guides/online-harassmentcyberstalking)**

11. The examples of Defendant Grady's harassment and cyberstalking are too

numerous for a limited brief. Therefore, Plaintiff will remark on a few of the more prominent

examples. Defendant Grady has stalking down to a fine art. When Schmalfeldt left Maryland to move to Wisconsin, Grady informed his readers of Schmalfeldt's new location before Schmalfeldt even arrived. **(EXHIBIT A).**

12. When Schmalfeldt moved from Wisconsin to Iowa, Grady was the first to publish Schmalfeldt's new home address. **(EXHIBIT B)**

13. As of Schmalfeldt's moving to South Carolina, Grady has been blogging inaccurate, defamatory information about Schmalfeldt's fiancé. **(EXHIBIT C)**

14. Grady has been stealing copyrighted photos from Schmalfeldt and posting them on his blog with defamatory changes.

15. Defendant Hoge's blog is the central clearing house for all stalking and harassment of Schmalfeldt. He makes material misstatements about events in Schmalfeldt's life (https://hogewash.com/2017/05/16/prevarication-du-jour-152/, for example) and then allows his mostly anonymous readership to post all manner of false and defamatory commentary.

16. Hoge claims he is not responsible for the things his commenters say. But he also has a heavy moderating hand on his comments. Those who do not agree with his POV are not allowed through the gate. Therefore, one may assume comments that do appear are in line with Hoge's view of events.

17. Defendant Johnson's stalking has been in the arena of trying to get Schmalfeldt fired from part time employment and apartment residences. For a brief period this past spring Schmalfeldt took a part-time job at a radio station in Iowa. Johnson wrote to the station manager to "inform" him about Schmalfeldt's penchant for "child pornography" and his fondness for the act of "urinating on cub scouts."

18. Johnson also shared this info with the management of the Juniper Courts

Apartments and the Board of Directors who manage the place for the Sisters of Saint Francis.

**(EXHIBIT D)**

19. Schmalfeldt was hesitant to give his Iowa address to WJJ Hoge III for the reasons outlined above. After all, it was the harassment and stalking of Hoge et al that caused Schmalfeldt to move from Maryland, to Wisconsin, then to Iowa. When Schmalfeldt purchased a 1999 Ford Explorer in 2016, Grady illegally obtained Schmalfeldt's social security number, used it to illegally access Schmalfeldt's Wisconsin DOT records, illegally ascertained the license plate number of the vehicle, then – knowing the address – drove from the Chicago suburbs to the southern Milwaukee suburbs to photograph Schmalfeldt's car in the apartment parking lot, posting the photo on Grady's blog. **(EXHIBIT E)** But when Grady published Schmalfeldt's address on his blog, Schmalfeldt relented and sent the change of address form to the court via mail and to Hoge via e-mail. This was March 30, 2017. Grady lives about a two-hour drive from Schmalfeldt's Iowa address. On the morning of March 31, Schmalfeldt awoke to find the two passenger-side tires on his car were stabbed in the sidewalls. Of the dozen or so cars parked on the street that night, Schmalfeldt was singled out for this vandalism.

---

**Page 8: [4] Deleted**     **Bill Schmalfeldt**     6/25/17 2:21 PM

Libel is a method of defamation expressed by print, writing, pictures, signs,
    effigies, or any communication embodied in physical form that is injurious to
    a person's reputation, exposes a person to public hatred, contempt or
    ridicule, or injures a person in his/her business or profession. (See
    https://www.law.cornell.edu/wex/libel

**Page 11: [5] Deleted**     **Bill Schmalfeldt**     6/25/17 2:43 PM

The Judge ruled that

Trump should have been aware that this order to the crowd would be taken as a command and that "every person has a duty to every other person to use care to prevent foreseeable injury."

**Page 11: [6] Deleted**     **Bill Schmalfeldt**     6/25/17 2:49 PM

See

https://www.nytimes.com/2017/03/17/technology/social-media-attack-that-set-off-a-seizureleads-to-an-arrest.html T

| Page 14: [7] Deleted | Bill Schmalfeldt | 7/16/17 7:13 PM |
|---|---|---|

6. In the event this court deems this matter not suitable for determination or judgment, an order that these charges be referred to the proper state or federal law enforcement agencies for criminal prosecution; and

| Page 15: [8] Deleted | Bill Schmalfeldt | 7/16/17 7:35 PM |
|---|---|---|

Woodspring Suites

220 Whitty Drive, Room 224
Myrtle Beach, SC 29579
843-429-0581