# United States District Court
## For the District of South Carolina
## Florence Division

| | | |
|---|---|---|
| William M. Schmalfeldt, Sr. | ) | |
| | ) | |
| Pro Se Plaintiff | ) | |
| | ) | |
| -v- | ) | Case # 4:17-cv-01310-RBH-KDW |
| | ) | |
| Patrick G. Grady, William John | ) | |
| Joseph Hoge III, Eric P Johnson, | ) | |
| and Sarah Palmer | ) | |
| *(Defendants)* | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, DEFENDANTS' MOTION TO STRIKE, DEFENDANTS' MOTION TO MAKE MORE DEFINITE AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................ iii

INTRODUCTION........................................................................ 1

ARGUMENT............................................................................. 2

    I.    The Case for Specific Personal Jurisdiction……......................... 2

    II.   The Case Against Defendants' Allegation That Plaintiff's Claim for Libel is Tantamount to a SLAPP suit…………………………………………… 6

    III.  Previous Dismissals Have Nothing to Do with The Instant Case…… 8

    IV.  The Question Presented by the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Has Already Been Answered……..………………………………………………………. 8

    V.   The Defendants Err In Stating the Plaintiff Has Not Alleged Damages for Conspiracy………………………………………………………….. 9

    VI.  The Case for Abuse of Process………………………………………….. 10

CONCLUSION…………………………………………………………….. 12

EXHIBIT……………………………………………………………………… 14

# TABLE OF AUTHORITIES

## Cases

*ALS Scan, Inc. v. Digital Servs. Consultants, Inc* 293 F.3d at 712 (citations omitted) ....    3

*ALS,* 293 F.3d at 713-714 (citations omitted)..............................................    3

*Calder v. Jones*, 465 U.S. 783, 789–90 (1984)..............................................    4

*Cowburn v. Leventis,* 366 S.C. 20, 49, 619 S.E.2d 437, 453 (Ct. App. 2005)..............    9

*Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct. App. 2004)........................    9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)..................    4

*Gynecology Clinic v. Cloer*, 334 S.C. 555, 514 S.E.2d 592 (1999)..........................    10

*Int'l Shoe Co. v. Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)...................................................................................    4

*Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 601, 358 S.E.2d 150, 153 (Ct. App. 1987) 9,10

*J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 881 (2011)........................    4

*Kenney v. Independent Order of Foresters*, 744 F.3d 901 (4th Cir. 2014) (page 13, citing *West Virginia ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 779–80 (W. Va. 2004).......    3

*LaMotte v. Punch Line of Columbia, Inc.,* 296 S.C. 66, 370 S.E.2d 711 (1988)...........    9

*Lee v. Chesterfield General Hosp., Inc.,* 289 S.C. 6, 13, 344 S.E.2d 379, 383 (Ct. App. 1986)..........................................................................................    9

*Lyon v. Sinclair Refining Co.,* 189 S.C. 136, 200 S.E. 78 (1938)............................    9

*Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)....    3

*Peoples Federal Savings & Loan Ass'n of S. Carolina v. Resources Planning Corp.*, 358 S.C. 460, 470, 596 S.E.2d 51, 56-57 (2004)..............................................    9

*Pye v. Fox*, 369 S.C. 555, 633 S.E.2d 505 (2006)...........................................    9

*Shaffer v. Heitner*, 433 U.S. 186, 187 (1977)..............................................    4

*Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 & n.6 (2014)..................................    4,5

*Wells v. Liddy*, <u>186 F.3d 505</u>, 521-22 (4th Cir. 1999)............................................. 2

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)................... 3,4

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)...... 3,4

**Rules**

*Restatement (First) of Conflict of Laws § 377 n.5 (1934)*................................... 2

**Statutes**

*SC Code Ann. § 36-2-803(1)(c)*.................................................................. 2

## **INTRODUCTION**

The main question of this case is whether a person has the right to seek judicial relief from people who have been hounding, harassing, threatening, libeling and conspiring against him for years. Can a person who moves from Maryland to Wisconsin to Iowa to South Carolina rely on the Federal Court System to seek justice against individuals whose online actions extend beyond the borders of the forum state of South Carolina, but who have definitely affected the Plaintiff and his attempted business dealings in South Carolina? Can libelous statements written before the Plaintiff moved to the forum state but read by potential landlords in the forum state be brought to the attention of the Court? Can conspiracy conducted by Defendants before plaintiff moved to forum state, as well as conspiracy that continues to this date, be shown to a forum state jury? Can reckless conduct/wanton misconduct that occurred when Plaintiff lived in Maryland, Wisconsin and Iowa be mentioned in the complaint along with the same torts that continue to occur even now?

Plaintiff has determined that after years of suffering abuse at the hands of the Defendants, his only chance of making it stop is to hit the Defendants where it hurts the most, in the wallet. If Specific Personal Jurisdiction is denied, the Plaintiff is faced with the choice of dropping his case altogether, ending his attempt to live the rest of his life without being harassed by these Internet Bullies, or giving up his search for justice in his new home state and seeking specific personal jurisdiction over defendants living in Illinois, Maryland, Tennessee and North Carolina, or picking one of the defendants' home states and facing the same problem with specific personal jurisdiction from the three defendants who do not live in that state.

The honorable Court should rule that South Carolina can and does exercise specific personal jurisdiction over the diverse defendants and that the Plaintiff is free to present evidence

to the jury of how the tortuous actions of the Defendants over the past several years have led to the problems the Plaintiff faces today and the damages caused by those willful, malicious actions.

## ARGUMENT

### I. The Case for Specific Personal Jurisdiction

South Carolina's "long-arm statute" defines "personal jurisdiction based upon conduct." Specifically:

**(1)    A court may exercise personal jurisdiction over a person who acts directly or by an agent to a cause of action arising from the person's**

**(c)    commission of a tortious act in whole or in part in this state;**

*SC Code Ann. § 36-2-803(1)(c)*

The acts outlined in the complaint, save for Count IV, occurred in South Carolina. The act outlined in Count IV affected the Plaintiff's life, health, and ability to find permanent lodging in South Carolina.

Under the traditional American rule, the wrong is considered as being done where the injury takes place. The Restatement has expressed this rule in the following terms:

**"Section 377· The place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."**

In the defamation context, "the place of the harm has traditionally been considered to be the place where the defamatory statement was published; i.e., seen or heard by non-parties." *Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999); see also *Restatement (First) of Conflict of Laws § 377 n.5* (1934) ("Where harm is done to the reputation of a person, the place of wrong is where the defamatory statement is communicated.").

2

Although conduct that causes harm can occur in one state and the resulting injury to a plaintiff can occur in another state, "the substantive rights between the parties are determined by the law of the place of injury." *Kenney v. Independent Order of Foresters*, 744 F.3d 901 (4th Cir. 2014) (page 13, citing *West Virginia ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 779–80 (W. Va. 2004)

The Fourth Circuit has established three elements of specific jurisdiction: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS*, 293 F.3d at 712 (citations omitted).

In addition, the Fourth Circuit has "adopt[ed] and adapt[ed]" the Zippo test for evaluating the sufficiency of contacts with the forum made via electronic means such as the internet. See ALS, 293 F.3d at 713–14 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The Fourth Circuit's formulation is as follows:

> **[A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Id.at 714.**

> **Because few websites engage in "systematic and continuous" contact with any given state, the Zippotest contemplates an analysis under the doctrine of specific jurisdiction. Zippo Mfg. Co., 952 F. Supp. at 1122.**

To be consistent with the Due Process Clauses of the Fifth and Fourteenth Amendments, an exercise of specific personal jurisdiction requires a showing that:

> **"(1) a defendant has made "sufficient 'minimum contacts' with the forum     state; (2) the claim asserted against the defendant [ ] arise[s] out of those contacts, and [that] (3) the   exercise of jurisdiction [would be] reasonable [under the circumstances]." Id. at 1122–23(citing *Mellon Bank (East) PSFS, Nat. Ass'n v.***

*Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)); see *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (analyzing whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there"); see also *Shaffer v. Heitner*, 433 U.S. 186, 187 (1977) (considering the relationship "among the forum [ ], the defendant, and the litigation").

Where intentional torts are concerned, however, jurisdiction is proper in the absence of purposeful availment so long as the defendant "expressly aimed" its tortious behavior towards the forum state. See *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (discussing how petitioners' intentional and tortious actions were "expressly aimed" at the state); see also *Martin H. Redish, Of New Wine and Old Bottles: Personal Jurisdiction, the Internet, and the Nature of Constitutional Evolution, 38 JURIMETRICS J. 575, 596–600* (1998) (discussing the impact of the *Calder* decision).

The reasonableness prong, on the other hand, focuses on whether an exercise of jurisdiction would run contrary to "traditional notions of fair play and substantial justice" See *Int'l Shoe Co. v. Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1123 (W.D. Pa. 1997) (quoting *World-Wide Volkswagen*, 444 U.S. at 292).—a concept that encompasses the burden on the defendant, "'the forum state's interest in adjudicating the dispute,'" the plaintiff's interest in securing a convenient forum, and overall considerations of interstate judicial economy and efficiency. *Id.*

Courts may exercise specific or "case-linked" jurisdiction over an out-of-state defendant only when the claims at issue "arise out of or relate to" the "defendant's suit-related conduct," and only when such conduct creates "a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 & n.6 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 881 (2011)

4

(plurality opinion).

As the Supreme Court has explained, the "substantial connection" element, or "minimum contacts" inquiry, asks whether the defendant has intentionally acted within the forum state to such a degree that it would have fair notice of being subject to suit in that jurisdiction. *Walden*, 134 S. Ct. at 1121-23.

Defendants in the instant case certainly meet the requirements of the Fourth Circuit to be haled into a South Carolina District Court. They meet the requirements of the South Carolina Long-Arm Statute for having committed "a tortious act in whole or in part in this state," using the *lex loci delecti* approach stating place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties. Although the online publication of the defamatory material makes it available worldwide, it is clear the defendants' manifest intent was to negatively influence the Plaintiff's ability to find a permanent residence in South Carolina.

The defendants expressly aimed their defamatory content towards a South Carolina audience by their frequent references to Plaintiff's location in a hotel in Florence before moving to a hotel in Myrtle Beach. The intent is manifested not only by the references shown in Plaintiff's accompanying Motion in Opposition, it is manifested by the past efforts of the defendants to negatively affect the Plaintiff's living arrangements in Wisconsin and Iowa. Given the nature of those efforts, one can reasonably reach the conclusion that the defendants intended, by their defamatory statements, to make it difficult for Plaintiff and his fiancé to secure permanent lodging in the forum state, thereby depriving South Carolina landlords – who, like other property managers screening potential tenants – turn to Google to learn details about a prospective tenant not available in credit reports and background checks.

As of the end of July 2017, a Google Search of the name "Bill Schmalfeldt" yielded 37,400 results. Defendant Grady's blog comes up in 3rd place among those results, Defendant Palmer's blog is 7th, Defendant Hoge's blog is 15th. Defendant Johnson is a frequent commenter on all three of those blogs.

The defendant knew, or should have reasonably anticipated, that their defamatory postings aimed at South Carolina would cause harm to the Plaintiff in South Carolina, harm to the potential landlords who otherwise would have benefitted from the rental payments made by Plaintiff, were injurious to the Plaintiff's reputation among potential landlords in South Carolina, and would likely result in their being haled into a South Carolina Court.

Granting specific personal jurisdiction in the instant case would satisfy any Fifth or Fourteenth Amendment due process concerns, the "reasonableness prong" of the due process analysis as granting jurisdiction over these defendants would not be offensive to traditional notions of fair play and substantial justice, and would comport with the forum state's interest in adjudicating the dispute, the Plaintiff's interest in securing a convenient forum, and overall considerations of interstate judicial economy and efficiency.

Denying specific personal jurisdiction would be injurious and detrimental to the interests of justice as a denial would require the Plaintiff to have to decide between refiling his complaint in Maryland, North Carolina, Tennessee or Illinois, or giving up his attempt to seek justice from the people who have been and will continue to defame Plaintiff in the absence of being held responsible for their actions.

## II. The Case Against Defendants' Allegation That Plaintiff's Claim for Libel is Tantamount to a SLAPP suit

The Defendants admit that South Carolina is a state that does not have Anti-SLAPP statutes. (Strategic Lawsuit Against Public Participation.) The Defendants then go on to fill four

pages of their Memorandum of Law endeavoring to argue that the Plaintiff's case should be dismissed because it is a SLAPP suit.

This notion can be easily dismissed. Plaintiff has no interest in silencing the Defendants. They have the First Amendment right to express any true, non-defamatory opinion they wish to express. Plaintiff has only one interest in the writings of the Defendants – that the things they write about Plaintiff be provably true or clearly stated as opinion. Even in the arena of opinions, one cannot disguise a defamatory statement merely by claiming it is an opinion. "Pure Opinions" are opinions that cannot be proven true or false by objective measures. One cannot legally create "proof" of something that did not happen. Couching false statements of fact as opinion or within quotes from other sources won't protect the writer from a libel complaint. Nor will trying to cover oneself by saying "Plaintiff is allegedly faking his Parkinson's disease." A reader of such a statement could well assume the writer has unstated facts upon which to base that conclusion, and since it can be proven whether or not a person is faking Parkinson's disease, the implied fact that he is faking turns out to be a false, defamatory statement.

If Defendant Palmer wishes to continue writing her blog at billysez.wordpress.com, that is her business. If she takes a quote from the Plaintiff and twists its context to imply something untrue and derogatory, then it becomes the Plaintiff's business. (Also, Palmer takes improper liberties with the Plaintiff's name by appropriating it as the name of her blog, which is currently "Billy Sez – Adventures in Bill Schmalfeldt's Pretendy Land Internet Courtroom. All Rise!"

Defendants mention a convict named Brett Kimberlin in the Memorandum of Law supporting their motion to dismiss. This is a crass move on the Defendants' part to prejudice the Judge and Jury against the Plaintiff. Kimberlin served his time in a Federal Prison for his crimes. He is now a free man and should be allowed to live his life as such. He is not connected to the

7

Plaintiff in this suit in any other way than friendship and the fact they are both Defendants in a lawsuit filed in the Carroll County, Maryland, Circuit Court by Defendant Hoge. He has nothing to do with the instant suit and should not have his name thrown into the discussion in a blatant attempt to smear the Plaintiff by association.

### III. Previous Dismissals Have Nothing to Do with The Instant Case

Again, the Defendants go back to their allegation that this is a SLAPP suit. Since there is no such creature in the South Carolina menagerie of legal oddities, this cannot be a SLAPP suit and the Court should ignore all attempts to turn this simple, easily proven libel case into something that, by law, does not exist in this state. It is true that Plaintiff has tried to get justice against some of these defendants in the past and has stumbled over the hurdle of Personal Jurisdiction. Having learned from his past, *pro se* mistakes, Plaintiff feels confident the Court will see that due process is served, the South Carolina Long Arm Statute is satisfied, and that the harm caused to Plaintiff in South Carolina and potential landlords in this state merits a finding of Specific Personal Jurisdiction in this case.

### IV. The Question Presented by the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Has Already Been Answered

One of the unique and very useful aspects of filing a *pro-se* case in the District of South Carolina is that such complaints are instantly submitted to a Magistrate Judge who is charged with determining whether a complaint, among other things, states a claim upon which relief can be granted. If the Magistrate Judge found that was not the case, her Report and Recommendation to the Presiding Judge would have included the recommendation that the complaint be dismissed.

The Magistrate Judge has made no such finding, even though that was one of her specific purposes for examining the complaint. Therefore, she recommended the case be placed in proper

form, placed on the docket, summonses be sent and the wheels of the civil justice machine be set

into motion.

### V. The Defendants Err In Stating the Plaintiff Has Not Alleged Damages for Conspiracy

To the contrary. In Paragraph 24 of the SAC, Plaintiff is quite specific about the damages

he seeks. The daily, over the back fence-style gossiping and idea exchanging between the

Defendants and anonymous commenters discussing ways to further wreck the Plaintiff's life is

the very definition of conspiracy. These are the things third party readers see when they do a

Google Search on Plaintiff's name, and they are taken as truth. They have caused irreparable

damage to Plaintiff's reputation that is difficult to quantify with a monetary value. But Plaintiff

asks $100,000 in actual damages and $500,000 in punitive damages from each Defendant.

A review of some of the citations explaining the elements of a civil conspiracy in the

forum state was published in the ruling of the South Carolina Supreme Court in *Pye v. Fox*, 369

S.C. 555, 633 S.E.2d 505 (2006)

> The elements of a civil conspiracy in South Carolina are (1) the combination of two
> or more people, (2) for the purpose of injuring the plaintiff, (3) which causes special
> damages. *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E.2d 711
> (1988); *Cowburn v. Leventis*, 366 S.C. 20, 49, 619 S.E.2d 437, 453 (Ct. App. 2005);
> *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct. App. 2004); see also *Peoples
> Federal Savings & Loan Ass'n of S. Carolina v. Resources Planning Corp.*, 358 S.C.
> 460, 470, 596 S.E.2d 51, 56-57 (2004) ("A civil conspiracy is a combination of two or
> more parties joined for the purpose of injuring the plaintiff and thereby causing
> special damage.") (citation omitted). It is essential that the plaintiff prove all of
> these elements in order to recover. *Lyon v. Sinclair Refining Co.*, 189 S.C. 136, 200
> S.E. 78 (1938). The "essential consideration" in civil conspiracy "is not whether
> lawful or unlawful acts or means are employed to further the conspiracy, but
> whether the primary purpose or object of the combination is to injure the
> plaintiff." *Lee v. Chesterfield General Hosp., Inc.*, 289 S.C. 6, 13, 344 S.E.2d 379,
> 383 (Ct. App. 1986).
>
> "[I]n order to establish a conspiracy, evidence, direct or circumstantial, must be
> produced from which a party may reasonably infer the joint assent of the minds of

9

two or more parties to the prosecution of the unlawful enterprise." *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 601, <u>358 S.E.2d 150</u>, 153 (Ct. App. 1987); accord *Cowburn*, 366 S.C. at 49, 619 S.E.2d at 453. This Court has observed:

> Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other circumstances. Island Car Wash, Inc. v. Norris, 292 S.C. 595, <u>358 S.E.2d 150</u> (Ct. App. 1987). "Civil conspiracy is an act which is by its very nature covert and clandestine and usually not susceptible of proof by direct evidence. . . ." Id. at 601, 358 S.E.2d at 153. An action for civil conspiracy is an action at law; the trial judge's findings will be upheld on appeal unless they are without evidentiary support. *Gynecology Clinic v. Cloer*, 334 S.C. 555, 514 S.E.2d 592 (1999).

## VI. The Case for Abuse of Process

Defendant Palmer clearly abused the restraining order process in her successful attempt to secure a no contact order against Plaintiff.

No contact orders exist to keep people intending to cause harm to another person from coming into contact with the object of their intended harm. All Plaintiff did was act persistently in his attempt to learn Palmer's correct address for service of summons. He also wanted to know whether or not Palmer lived in Rockingham County, North Carolina, or Guilford County, North Carolina, when she secured her January 2016 no contact order against Plaintiff. These questions were asked in a polite fashion without threats, extortion or any other invective that would cause a person reasonable fear of harm.

Defendant Palmer's actions are hardly those of a woman in fear of a 62-year old man who has been suffering from Parkinson's disease for nearly 18 years. She continues to maintain a blog of daily defamation against Plaintiff.



A reasonable, rational person living in fear of a person does not maintain a blog of daily defamation against a person who causes her to fear for her life. That would be insane and self-destructive. A person living in mortal terror of another does not publish a photo on her blog that would certainly cause an unstable or violent person to seek retribution against her like Defendant Palmer did by publishing a poorly photoshopped picture of the Plaintiff preparing to deliver an elbow drop on the frail and mortally-ill body of his dying wife – a photo the Plaintiff's late wife specifically asked him to take. She knew of and was extremely stressed by the fact that readers of the Grady, Hoge and Palmer blogs were mocking her in the hopes of adding to Plaintiff's stress in advance of her impending death. She knew that her imminent passing was a huge strain on the Plaintiff as well, so she asked Plaintiff to take the picture and send it to Defendant Hoge as well as another yet-to-be-joined party so they might realize the pain and suffering they were causing to a real human being in the last days of her life. Plaintiff believed this was an act of grace and dignity from a woman who had never done a moment's harm to anyone in her life, let alone the Defendants in the instant case, and she mistakenly believed that if Plaintiff sent the picture with an e-mail saying it was not for publication, they might respect her wishes and just stop bothering them. Instead of respecting her wishes and Plaintiff's instructions against publication, either Defendant Hoge or the as-yet unnamed party took it upon himself to deliver a copy of the photo to Defendant Grady, who first published it on his Thinking Man's Zombie website, where it could be copied by others who, along with the Defendants, plastered it all over the Internet. (Exhibit A)[1]

Defendant Palmer did not answer Plaintiff's reasonable question, she did not demand that he cease all contact (even though her no-contact order gained under similar circumstances)

---

[1] https://encyclopediadramatica.rs/Bill_Schmalfeldt#Gail_Schmalfeldt

expired in January 2017. A Greensboro, NC, judge swallowed her explanation that having told me to cease contact in December 2015 was sufficient. She also lied while under oath, claiming she was still being represented by an attorney whose representation of her ended when the US District Court for the Eastern District of Wisconsin found Plaintiff lacked Personal Jurisdiction.

The decision to seek another no contact order instead of answering the reasonable questions posed by the Plaintiff amounts to the willful misuse of the restraining order procedures for a purpose for which that process was not intended. It was intended to protect people who feared actual harm, not to get pesky Plaintiffs to stop asking questions she did not wish to answer.

## CONCLUSION

Before making a decision whether or not to dismiss Plaintiff's case for any reason, this honorable Court should review the contents of the blogs of Defendant Hoge[2], Defendant Palmer[3] and Defendant Grady[4], paying particular attention to the comment sections for each blog post. Then the Court should ask whether this sort of blatant defamation, harassment, misconduct and invasion of a private citizen's privacy should be allowed to happen to a law-abiding resident of any state, not just the forum state of South Carolina.

Cyberbullying of this sort is becoming more rampant each year. The Courts have been reluctant or unable or, perhaps, unwilling to come up with a way to deal with the complaints of a person living in one state when that person is defamed, mocked, humiliated, threatened and conspired against online by multiple defendants in multiple states.

---

[2] http://hogewash.com
[3] http://billysez.wordpress.com
[4] http://thinkingmanszombie.com

With a decision to grant Specific Personal Jurisdiction in this case, and either a subsequent jury trial or summary judgment by this honorable Court, perhaps the Fourth Circuit can become the first circuit to put its foot down in a way that defends not only teenagers from the ravages and deadly harm of cyberbullying, but can come up with a measuring stick to be used to see whether or not an adult person living in South Carolina can be ganged-up on online by cyberbullies in multiple states. By dismissing Defendant's motions, this Court could be taking the first step in untangling this apparent Gordian Knot that allows the defamers, abusers, conspirators and liars to escape unpunished for the sole reason that they don't happen to live in the same state as the person they've chosen to torment.

For the foregoing reasons, the Defendants' Motions should be DENIED.

Respectfully submitted this 7th day of August, 2017

William M. Schmalfeldt, Sr., Pro Se
WoodSpring Suites
220 Whitty Drive, Room 121
Myrtle Beach, SC 29579
843-429-0581
truthatory@outlook.com

**AFFIDAVIT**

I, William M. Schmalfeldt, Sr., solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Dated August 7, 2017                                William M. Schmalfeldt, Sr.

13

# EXHIBIT A

Blog Post and Photo Published by Defendant Palmer Belying Her Claim of Living in Fear of Actions of the Plaintiff



https://billysez.wordpress.com/2016/08/15/but-but-but-family-is-supposed-to-be-off-limits-wahhhh/ 80%

My Sites Reader

Well, well, well. The DUMBFUCK is being a DUMBFUCK.And proving that he really needs to just come out of that closet already. No shame in being homosexual. I don't know why he doesn't just come out and say so. One's sexual preferences aren't generally referred to as being "amusing" after all. Perhaps, however, it's a distraction for a proclivity for younger boys. Now THAT is a HUGE issue that just isn't talked about in the gay male community...

Bill Schmalfeldt Follow

Why Patrick Paul Krendler Grady wishes to stick his nose into a beef between me and Eric Johnson, who knows? I win.

9:21 PM - 14 Aug 2016

Something that just hit me as well. "I win." Just what, pray tell, does Bill Schmalfeldt "win" when he superimposes the face of yet ANOTHER child of an "enemy" in the place of the showgirl's? Doesn't he realize that HE used the picture to show his lustful nature towards the sexy showgirl? And that now HE is changing it so that HE (both in the first change and now in this last change) is insinuating that HE lusts after his "enemy's" children. It's all about HIM. Can't shame his "enemies" nor their children by modifying the picture. It's HIM. **She neglects to mention the "child" is an adult. But it's OK that Patrick Grady used a picture of my dead mother.**

Odd that he doesn't quite get that. Queer, even...

And guess what? That means I'll show you all of the other picture. Since family is really off limits, of course. HERE YOU GO.

**When you click this link, it takes you to this website.**

**Which displays THIS picture.**

imgur.com/a/fxWfX

imgur.com/a/fxWfX 67% @sheeplerage

imgur New post

Uploaded Aug 15 Next Post

1 view

# United States District Court
## For the District of South Carolina
### Florence Division

William M. Schmalfeldt, Sr.          )
                                     )
          Pro Se Plaintiff           )
                                     )
                          -v-        )          Case # 4:17-cv-01310-RBH-KDW
                                     )
Patrick G. Grady, William John       )
Joseph Hoge III, Eric P Johnson,     )
and Sarah Palmer                     )
          Defendants                 )
                                     )

---

## CERTIFICATE OF SERVICE

On August 7, 2017, I, William M. Schmalfeldt, Sr., pro se Plaintiff in the instant case, served his

Motion in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction,

Defendants' Motion to Strike, Defendants' Motion to Make More Definite, Defendants' Motion

to Dismiss for Failure to State a Claim for Which Relief Can Be Granted as well as Plaintiff's

Memorandum of Law in Support of His Opposition to the above-mentioned motions to Mr.

Louis D. Nettles by email as agreed and mailed a copy postage prepaid to:


Mr. Louis D. Nettles. Esq.
PO Box 6139
Florence, SC 29602


Respectfully submitted this 7th day of August, 2017

William M. Schmalfeldt, Sr., Pro Se
WoodSpring Suites
220 Whitty Drive, Room 121
Myrtle Beach, SC 29579
843-429-0581
truthatory@outlook.com